IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICKY HAMMONDS,

   Plaintiff,      No. CIV S-04-0909 MCE GGH P

  vs.

I. REYES, et al.,       <u>ORDER AND</u>

   Defendants.     <u>FINDINGS & RECOMMENDATIONS</u>

_____/

   Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the original complaint filed May 7, 2004. Plaintiff alleges that defendants Correctional Officers Reyes and Black used excessive force against him in violation of the Eighth Amendment. The claims against the other defendants have been dismissed.

   Pending before the court is defendants' summary judgment motion filed August 8, 2005. Also pending is plaintiff's motion to compel filed July 21, 2005. After carefully considering the record, the court recommends that defendants' motion for summary judgment be denied. Plaintiff's motion to compel is denied.

/////

/////

1

MOTION TO COMPEL

The grounds of the motion to compel are not entirely clear. Plaintiff states that defendants did not respond to two requests for production of documents. Plaintiff states that attached to the motion are copies of these requests. However, the only exhibit attached to the motion is a letter from plaintiff to defense counsel requesting an opportunity to review his deposition transcript.

Attached as Exhibit E to defendants' summary judgment motion is a copy of the corrections plaintiff made to his deposition transcript. This document is dated July 13, 2005. Because plaintiff has reviewed his deposition transcript and made corrections, the motion to compel is denied as moot.

On August 24, 2005, defendants filed a response to plaintiff's motion to compel. Defense counsel states that plaintiff's motion to compel concerns his request for color photographs depicting plaintiff's injuries after the incident. On March 18, 2005, defense counsel served plaintiff with black and white copies of these photographs. On August 19, 2005, defense counsel received color copies of these photographs and has now sent them to plaintiff. To the extent plaintiff's motion to compel is based on his request for these color photographs, the motion is denied as moot.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

1  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
2  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
3  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
4  genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.
5  56(e) advisory committee's note on 1963 amendments).

6        In resolving the summary judgment motion, the court examines the pleadings,
7  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
8  any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
9  477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
10 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct.
11 at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
12 obligation to produce a factual predicate from which the inference may be drawn. See Richards
13 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
14 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than
15 simply show that there is some metaphysical doubt as to the material facts . . . . Where the record
16 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
17 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

18       On September 28, 2004, the court advised plaintiff of the requirements for
19 opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v.
20 Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409,
21 411-12 (9th Cir. 1988).

22 ANALYSIS

23       In his verified complaint, plaintiff alleges that defendants used excessive force
24 when they forced him to the ground after a verbal exchange. Complaint, p. 2. Plaintiff alleges
25 that after he was forced to the ground, he suffered facial injuries and was temporarily knocked
26 unconscious. Plaintiff alleges that defendants banged his head and face on the concrete ground.

At the time he filed the complaint, he alleged that he suffered from blurred vision and migraine headaches caused by defendants' use of force.

The following facts are undisputed. On May 3, 2003, plaintiff was called to the 4-Block unit office at California State Prison-Sacramento (CSP-Sac) for a telephone interview with Lieutenant McFall concerning a grievance. Correctional Officer Curry and defendants Reyes and Black were present in the office. Plaintiff asked defendant Black if he could see the Sergeant regarding hair clippers. Correctional Officer Curry told plaintiff, "You don't need to see the Sergeant because I already answered the 602." Plaintiff told Officer Curry, "Shut up. I'm not even talking to you." Officer Curry replied, "Who you telling to shut up?" Plaintiff replied, "It ain't that serious Curry, but if we were on the streets it would be a different thing." At some point Officer Curry stated, "You don't tell me to shut up." Plaintiff responded, "I'm not talking to you tramp."

Plaintiff then had his phone conversation with Lieutenant McFall. After plaintiff got off the phone, he was visibly upset. At some point, defendant Reyes looked at Officer Curry and said, "assault on an officer." Plaintiff responded, "What the fuck you all talking about?"

Officer Curry told plaintiff that if he wanted to see the Sergeant, they would take him to see the Sergeant. Plaintiff then let Officer Curry handcuff him. Defendants Reyes and Black then escorted plaintiff out of the office. As they did, plaintiff asked defendant Reyes why he accused him of assaulting Officer Curry. Defendant Reyes responded, "You punk just like the rest of them, all ya'll in here." Plaintiff then told defendant Reyes, "All you mother fuckers are punks." Plaintiff also told defendant Reyes about the old days at Folsom:

> I told her back in the old days CO came in, do their eight hours, if you didn't make them do their job, they wouldn't come at you. That's the first part of it I told her. I say, you know, the fact is, back in the old days CO know they had something coming, they had to it coming, and inmates knew if they had something coming, they had it coming. Now you people talk to us any kind of way because all the different laws, all the guns. I say, "You don't fear nobody no more so you no respect for us."

Defendants' Exhibit B, Plaintiff's Deposition, p. 38.

As they walked, plaintiff said to defendant Reyes, "I even like your flat pancake ass." Plaintiff then snapped his head and acted as though he were trying to kiss defendant Reyes in the face. At this time, plaintiff's face was eight to ten inches from defendant Reyes's face. Defendant Reyes, who was holding plaintiff's arm, then released his arm and raised her hand to block plaintiff. Defendant Black then told plaintiff to get down on the ground. Plaintiff did not get down. Instead he responded, "Get down for what?" Defendants then forced plaintiff to the ground.

In her declaration, defendant Reyes states that when plaintiff snapped his head toward her with his mouth open, she thought he was trying to bite her. Defendants' Exhibit C, ¶ 12. Defendant Black also thought that plaintiff was trying to bite defendant Reyes. Defendants' Exhibit D, ¶ 10.

Defendants argue that they are entitled to qualified immunity. The determination of whether a prison official is entitled to qualified immunity is a two-step test. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001). In the first step, the court views the record in the light most favorable to the party asserting injury to determine whether the officer's conduct violated a constitutional right. Id. If the plaintiff establishes the violation of a constitutional right, the court next considers whether that right was clearly established at the time the alleged violation occurred. Id. The contours of the right must have been clear enough that a reasonable officer would have understood that what he was doing violated that right. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987).

The court first considers whether defendants' conduct violated a constitutional right. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). When determining whether the force was excessive, we look to the "extent of the injury..., the need for application of force, the

relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id., at 7.

The facts regarding the threat defendants perceived from plaintiff are relatively undisputed. A verbal exchange had occurred between plaintiff and defendants. Plaintiff then acted as though he were going to kiss defendant Reyes, which defendant Reyes perceived as an attempt to bite her. Plaintiff then refused an order to get down. Based on these facts, the court would find that defendants reasonably perceived a threat from plaintiff.

The parties dispute the amount of force defendants used in making plaintiff "get down." According to defendant Reyes, after plaintiff refused the order to get down, she grabbed the back of plaintiff's shoulder and neck and, with defendant Black's assistance, "placed" plaintiff on the ground. Defendants' Exhibit C, ¶ 12. In his complaint, plaintiff alleges that defendants banged his head against the ground with an amount of force that caused him to become temporarily unconscious. In his verified opposition, plaintiff alleges that defendants slammed his head on the concrete floor after he was already on the ground.

Defendants' motion does not address the extent of plaintiff's injuries. As stated above, plaintiff alleges that he became temporarily unconscious at one point. Attached to the complaint is a medical report taken from plaintiff after the incident. The report states that plaintiff had an abrasion on his right cheek, his right shoulder and left knee. Also attached to the complaint is a report taken after the incidents which describes photographs taken of plaintiff's injuries which included redness on anterior view of face, redness on right profile of face, redness on front of left knee, redness on left and right shoulder. Plaintiff attached black and white photocopies of these photographs to his complaint. The quality of the photocopies is too poor for the court to evaluate plaintiff's injuries depicted in them.

While defendants may have legitimately perceived a threat from plaintiff's behavior, the court cannot determine whether defendants acted in a good faith effort to restore

7

discipline without knowing the amount of force they used in making plaintiff get down and the extent of plaintiff's injuries.  For these reasons, the court cannot evaluate defendants' motion for summary judgment based on the Eighth Amendment or qualified immunity.  Accordingly, defendants' summary judgment motion should be denied.

Accordingly, IT IS HEREBY ORDERED that plaintiff's July 21, 2005, motion to compel is denied;

IT IS HEREBY RECOMMENDED that defendants' August 8, 2005, summary judgment motion be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   10/6/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
ha909.57